United States District Court
Southern District of Texas
FILED

APR 1 1 2003

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| JORGE ALBERTO FLORES and IMELDA HERNANDEZ CORDOVA (FLORES), Individually; and JAIME E. AGUIRRE, Individually; and FELIPE HERNANDEZ, Individually | § § § § § |
| (Plaintiffs herein) | § § |
| | §CIVIL ACTION NO. B-02-216 |
| vs. | § § |
| FORD MOTOR COMPANY; TITAN INTERNATIONAL, INC.; TITAN TIRE CORPORATION; AND TITAN TIRE CORPORATION OF TEXAS | § § § § |
| (Defendants herein) | § |

**MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEFING**

**SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION TO REMAND AND SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTION TO DISMISS, AND ALTERNATIVELY,**

**MOTION TO DEFER RULING TO ALLOW TIME FOR DISCOVERY**

NOW COME Jorge Alberto Flores, et al., Plaintiffs herein, and make and file this

their Motion for Leave to File Supplemental Briefing, and Supplemental Brief in Support

of Plaintiffs' Motion to Remand and Supplemental Response to Defendants' Motion to

Dismiss, and Alternatively, Motion to Defer Ruling to Allow Time for Discovery, and in

support of same would show unto this Honorable Court the following:



# I.

## Introduction

Defendants Titan International and Titan Texas raised novel arguments in their reply to Plaintiffs' Motion to Remand, and these same arguments are a part of the Defendants' various Motions to Dismiss. Plaintiffs therefore seek leave of this Court to file this supplemental briefing in order to respond to these issues.

At this time, Plaintiffs believe that a remand is timely (and appropriate pursuant to the record in this case). Nonetheless, Plaintiffs recognize that Rule 26 Disclosures have not yet occurred and that discovery to Defendants Titan is outstanding, and thus Plaintiffs hereby request the alternative relief of allowing for discovery (if the Court sees fit, and prior to a ruling on Defendants' motions to dismiss and/or Plaintiffs' Motion to Remand). Plaintiffs do believe that the compelling evidence already supports a remand in this case (but will leave this and the matter of allowing for more discovery to the sound discretion of the Court).

# II.

## The Issue

The Defendants' arguments in their removal and subsequent Motions to Dismiss center around whether Defendant Titan of Texas is a proper defendant. Although discovery is in its infancy in this matter, Plaintiffs already have substantial proof that Defendant Titan of Texas is properly a party to this suit (as an agent of the parent company, and/or as a single business enterprise, and/or as a corporation in a joint

enterprise with their parent company). Defendants cannot meet the heavy burden of proving fraudulent joinder, and thus the case should be remanded. Defendants' various Motions to Dismiss involve some of the same issues as Defendants' fraudulent joinder argument, and thus Plaintiffs' evidence presented herein also refutes the pending Defendants' Motions to Dismiss.

## III.

### Arguments & Authorities

The Defendants Titan argue venue is not proper in Cameron County, Texas, since "they" were not in Cameron County, Texas, at the time that the tire was manufactured. However, the whereabouts of any of the parties at that point in time is simply not relevant to the issue of proper venue in this matter. In Texas, venue is fixed at the time the cause of action accrues.[1]

With this incident, the cause of action accrued on September 2, 2002 (the date of the incident). Upon such date, the evidence demonstrates that the company that manufactured the tire (Defendant Titan International) maintained a subsidiary corporation (as the parent's agent in Texas, and as a single business enterprise in Texas, and as a joint enterprise in Texas) in Cameron County, Texas. As a part of this record, Plaintiffs have presented evidence that (at a minimum) raises a fact issue that the Titan Defendants have a principal place of business in the State of Texas in Cameron County, Texas.

---

[1] Venue is proper in the county of the defendant's residence at the time the cause of action accrued (C.P.R.C. s. 15.002(a)(3)), and in the county of the defendant's principal office in the state if the defendant is a corporation (C.P.R.C. s. 15.002(a)(4)).

Defendants Titan also claim that Defendant Titan International has "no link to the Southern District of Texas." Plaintiffs need not prove that Defendants' conduct in the forum state specifically relate to the occurrence in question. Defendants Titan have substantial contacts with the forum state (and county of suit) sufficient for the Court to exercise general jurisdiction. General jurisdiction is assessed by evaluating the Defendants' contacts with the forum state up to the date the suit was filed (not from the date of manufacture of the product in issue as alleged by Defendants). *Access Telecom, Inc. v. MCI Telecom, Corp.*, 197 F.3d 694, 717 (5th Cir. 1999).[2]

Defendants' reply concedes that the single business enterprise theory creates liability for the debts incurred by other constituents of the business. See *Paramount v. Taylor Rental Center*, 712 S.W.2d 534 (Tx.App.– Houston [14th Dist.] 1986). However, Defendants seek to impose a new requirement; that is, that the debts of the constituent business must have been incurred before any constituent businesses were formed. Clearly, if the constituent "businesses" are a fiction and are in reality all the same business, then the timing of the wrongful act is simply not relevant. If Defendants argument was correct, then it would lead to obviously unjust results in that any corporation that realized it had sold defective products could easily protect itself by

---

[2] General jurisdiction has been held to be established by: selling products through dealers in the forum state, *Metropolitan Life Insur. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560,571 (2d Cir. 1996); appointing a registered agent in the state *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1200 (8th Cir. 1990); employing salesmen in the state, *International Shoe v. Washington*, 326 U.S. 310,320 (1945); maintaining a temporary office in the state, keeping files, and maintaining accounts in the state, *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 447-49 (1952).

hiding behind new alter egos. Defendants approach is not the law, and Defendants can cite no case law for this proposition.

## IV.

### Contacts Attributable to Titan International

### Evidence of Titan Entities Behaving as a Single Entity

The manufacture or sale of a defendant's brand of products through an agent in the forum state may be sufficient to support jurisdiction. *Metropolitan Life Insur. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560,571 (2d Cir. 1996). I a strikingly similar circumstance, the Court in the Firestone Multi-District Litigation has reached the same conclusion. In the Multi-District Litigation, the Court concluded that the Court had jurisdiction over the Japanese Bridgestone Corporation based upon the contacts of the American Bridgestone/Firestone Corporation in manufacturing or selling Bridgestone tires. The Federal Court stated: "Bridgestone utilizes Firestone to both manufacture and sell Bridgestone brand tires in the United States." Exhibit A, Entry on Bridgestone Corporation's Motion to Dismiss the Master Complaint, at page 14, paragraph 1. "[T]o the extent that Firestone was acting as Bridgestone's agent, its contacts with the United States may be imputed to Bridgestone." *Id.* at page 14-15. "Regardless of where the title to the tires technically passes... ...it is reasonable to infer that Bridgestone's regular sales to U.S. corporations involve contacts with those U.S. companies..." *Id.* at 17.

> "Further, regardless of whether the plaintiffs ultimately can show an agency relationship by a preponderance of the evidence, it is at least reasonable at this state to infer that Bridgestone has regular contacts with Firestone, and therefore with the United States, arising out of Firestone's manufacture of

Bridgestone's brand tires here."

In the instant case, the parent company is Defendant Titan International and the subsidiary is Defendant Titan of Texas. As with the Multi-District Litigation with Japanese Bridgestone and American Firestone (and other Court opinions), the contacts of the subsidiary must be considered. Per the Court's opinion in the Multi-District Litigation, it is "reasonable to infer" that Defendant Titan International uses its subsidiary to manufacture its tires, and sell its tires, and that the subsidiary is the "agent" so that the contacts of the subsidiary corporation (Defendant Titan of Texas) are imputed to the Defendant Titan International.

Jurisdiction over foreign defendants may also be established when the defendant has purposefully availed itself of the benefit of the laws of the forum state. *Electrosource Inc. V. Horizon Battery Tech, Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999); *Metropolitan Life Insur. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996); Defendants have conceded that Titan International owns the land in Cameron County, Texas, where Titan of Texas conducts its business. See Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, at paragraph II.[3] Further, in a recent pleading in Duval County, Texas, Defendant Titan International sued Perilli Tire seeking contribution and indemnity. Additionally, Defendant Titan International has admitted on its website that it also contracts to lease space in Brownsville, Texas. Exhibit B, pages from the Titan

---

[3] "...the causes of action asserted by Plaintiffs do not arise from nor are they in any way associated with Titan International's ownership of the land of the fraudulently joined Titan Texas plant..." Defendants' Motion to Dismiss at paragraph II.

International website. These examples of owning and leasing property in Texas are examples of how Defendant Titan International purposefully avails itself of the laws of the forum state.

There is also significant evidence that the two constituents are really a single business enterprise. The officers and directors of Defendant Titan of Texas are all officers and directors of Defendant Titan International. See Exhibit C, Corporate Record for Titan Texas, and Exhibit B, Titan International website detail of officers and directors. Additionally, Defendant Titan International's website does not distinguish between the two corporations. Defendant Titan International advertises that it owns the plant in Brownsville, Texas. Exhibit B, website. Defendant Titan International advertises that it has a test track in Brownsville, Texas. Id. In fact, the sign in front of the Titan Texas plant uses the same logo as Defendant Titan International's website, and thus these two (2) companies are appearing to hold themselves out as one (1) company in their advertising. See Exhibits B, and Exhibit D, photograph of Titan sign in Brownsville. This body of evidence exists at a point in time of the case whereby no formal discovery has been provided by any of the parties.

Upon further discovery, Plaintiffs are convinced that a wealth of evidence will exist to demonstrate that Defendant Titan International and Defendant Titan of Texas conduct business as one (1) corporation. By way of example, but without limitation, industry knowledge suggests that the companies (Titan International and Titan of Texas) operate as a single business and/or joint enterprise in their handling of property claims,

handling of lawsuits, handling of warranty claims, handling of adjustment data,

management of quality control (with the parent company controlling quality processes),

management of methodologies of inspections, tire designing, tire engineering, sharing of

proprietary information and materials (including skim stocks), and that these companies

issue consolidated financial statements.   There are many reasons, and an abundance of

information, to consider these companies as a single entity

## V.

## Motion to Defer

In the alternative, should the Court be inclined to grant any of Defendant's

Motions, Plaintiffs request additional time for discovery. ***Williamson v. Tucker***, 645

F.2d 404, 414 (5th Cir. 1981); ***GTE New Media Services, Inc. v. BellSouth Corp.***, 199

F.3d 1343, 1351 (D.C. Cir. 2000); ***Vance ex rel. Hammons v. U.S.***, 90 F.3d 1145, 1148

(6th Cir. 1996); ("The general rule is that summary judgment is improper if the non-

movant is not afforded a sufficient opportunity for discovery.").

Discovery has barely begun – Initial Disclosures have not yet been exchanged.

Exhibit E, Joint Case Management Plan.  Plaintiffs have sent discovery regarding the

joint enterprise, single business enterprise, and agency theories.  Exhibit F, Discovery to

Titan.  Plaintiffs therefore request additional time for this discovery.

## IV.

### Alternative Motion to Defer Ruling on Other Matters

### Until After the Motion to Remand

Plaintiffs further request that the Court rule on Plaintiffs' Motion to Remand before exercising jurisdiction and deciding any other matters in this case.  See *Ruhrgas A.G. v. Marathon Oil, Co.*, 526 U.S. 574, 587-88, 119 S.Ct. 1563 (1999) ("both expediency and sensitivity to state courts' coequal stature should impel the federal court to dispose of [the motion to remand] first.") (citing *Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 155 (2nd Cir. 1996), ("a federal court first resolves any doubts about its jurisdiction over the subject matter of a case before ...otherwise disposing of a case").

## V.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that their Motion to Remand be granted, and that Defendants' various motions to dismiss be denied, or that the Court continue such matters (or defer ruling) until sufficient discovery is exchanged, and for such other and further relief to which Plaintiffs may show themselves justly entitled.

Respectfully submitted,

LAW OFFICES OF DOUGLAS ALLISON
500 North Water Street,
South Tower, Suite 400
Corpus Christi, Texas 78471
(361) 888-6002
(361) 888-6651 - Facsimile

By: *Brad Klager by permission of*
             Douglas A. Allison       *Douglas A. Allison*
             Federal No. 10252
             State Bar No. 01083500
             Bradford P. Klager
             Federal No. 24435
             State Bar No. 24012969

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been forwarded to opposing counsel of record, via facsimile and certified mail, return receipt requested, on this the 10th day of April, 2003.

Mikal C. Watts
The Watts Law Firm, L.L.P.
Tower II Bldg., Suite 1400
555 N. Carancahua
Corpus Christi, Texas 78478

Michael Rodriguez
Michael Rodriguez, P.L.L.C.
1000 E. Madison
Brownsville, Texas 78520

Richard H. Grafton
Brown McCarroll, L.L.P.
111 Congress Avenue, Suite 1400
Austin, Texas 78701-4043

_Brad Klager by permission of_

Douglas A. Allison

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

In re: BRIDGESTONE/FIRESTONE, INC.,   )  Master File No. IP 00-9373-C-B/S
TIRES PRODUCTS LIABILITY LITIGATION ) MDL NO. 1373
_____)
THIS DOCUMENT RELATES TO THE     )
MASTER COMPLAINT            )

### ENTRY ON DEFENDANT BRIDGESTONE CORPORATION'S
### MOTION TO DISMISS MASTER COMPLAINT

This cause is before the Court on defendant Bridgestone Corporation's ("Bridgestone")

Motion to Dismiss Master Complaint. The motion is fully briefed,[1] and the Court, being duly

_____

[1]The following briefs and other submissions have been filed and considered in conjunction with the instant motion to dismiss, along with their accompanying affidavits and exhibits:

- Bridgestone's Motion and Brief in Support (filed 1-29-01);
- Plaintiffs' Preliminary Response to Bridgestone's Motion (filed 2-26-01);
- Bridgestone's Reply to Plaintiffs' Preliminary Response (filed 3-13-01);
- Plaintiffs' Supplemental Response to Bridgestone's Motion (filed 3-20-01);
- Plaintiffs' Submission of Supplemental Authority in opposition to Bridgestone's Motion (filed 4-4-01);
- Plaintiffs' Submission of Supplemental Facts in opposition to Bridgestone's Motion (filed 4-5-01);
- Bridgestone' Response to Plaintiffs' Submission of Supplemental Authority (filed 4-9-01);
- Submission of Affidavit of Gabriel D. Browne in opposition to Bridgestone's Motion (filed by plaintiffs on 5-4-01);
- Plaintiffs' Third Supplement of Jurisdictional Evidence regarding Bridgestone's Motion (filed 8-29-01);
- Plaintiffs' Submission of Additional Supplemental Authority in opposition to Bridgestone's Motion (filed 9-7-01);
- Ford's Statement in Opposition to Bridgestone's Motion (filed 10-1-01);
- Plaintiffs' Final Response to Bridgestone's Motion (filed 10-5-01);
- Ford's Notice of Filing of Public Records Relevant to Bridgestone's Motion (filed 10-9-01);
- Bridgestone's Reply Brief in Support of its Motion (filed 10-26-01).

In addition, the Court has considered the parties' filings related to Bridgestone's Motion for Protective Order, to the extent they are relevant to the instant motion.



Exhibit "A"

advised, **DENIES** Bridgestone's motion for the reasons set forth below.

## I. PRELIMINARY MATTERS

In the instant motion, Bridgestone argues that the claims asserted against it in the Master

Complaint, which was filed in this court on January 2, 2001, should be dismissed because this

court lacks personal jurisdiction over Bridgestone. The Master Complaint combines dozens of

class action complaints involving Firestone tires which were filed in or removed to federal

district courts throughout the country and transferred to this MDL proceeding. The named

Plaintiffs in the Master Complaint are residents of numerous states[2] who seek to represent a

nationwide class consisting of "all persons and entities in the United States who now own or

lease, or owned or leased, vehicles that are or were equipped with Firestone-brand ATX, ATX II,

Firehawk ATX, ATX 23 Degree, Widetrack Radial Baja, Wilderness, or other comparably

designed or manufactured Firestone-brand, steel-belted radial tires."[3] The Master Complaint

names three defendants: Bridgestone, a Japanese corporation with its principal place of business

in Tokyo, Japan; Bridgestone/Firestone, Inc. ("Firestone"), an Ohio corporation with its principal

place of business in Nashville, Tennessee, and a wholly-owned subsidiary of Bridgestone; and

Ford Motor Company ("Ford"), a Delaware corporation with its principal place of business in

Dearborn, Michigan.

---

[2]The named Plaintiffs reside in Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Florida, Georgia, Illinois, Louisiana, Maryland, Massachusetts, Mississippi, Missouri, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, Tennessee, Texas, Utah, Virginia, and West Virginia.

[3]The Master Complaint also asserts claims against defendant Ford Motor Company relating to alleged defects in the Ford Explorer; these claims are irrelevant to the instant motion. Also irrelevant are the various subclasses proposed in the Master Complaint.

### A. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

In an Order dated July 27, 2001, the Court granted in part and denied in part a motion to dismiss the Master Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) which was filed by Ford and Firestone. In ruling on that motion to dismiss, the Court erroneously noted in a footnote that Bridgestone had not joined in the motion.[4] In fact, Bridgestone states in the instant motion that it "joins and incorporates herein by reference" that motion. Accordingly, the Court has reexamined the issues raised in the Rule 12(b)(6) motion as they apply to Bridgestone.

In the July 27, 2001, Order, the Court determined that Indiana's choice of law rules dictate that Tennessee law applies to the state law claims asserted against Firestone in the Master Complaint. Because virtually all of the factual allegations against Bridgestone in the Master Complaint involve actions it took in conjunction with Firestone, the bulk of which presumably took place at Firestone's corporate headquarters in Tennessee, we now determine that Tennessee law presumptively applies to the state law claims asserted against Bridgestone in the Master Complaint. That said, the reasoning of the Court's ruling on Ford and Firestone's motion to dismiss applies equally on all counts to Bridgestone. Accordingly, the Court hereby **GRANTS IN PART AND DENIES IN PART** the Rule 12(b)(6) motion as to Bridgestone for the reasons and to the extent set forth in the July 27, 2001, Order. Thus, in resolving the instant motion to dismiss, we will address only the following claims in the Master Complaint, to the extent that they remain following the July 27, 2001, Order: the First Claim for Relief, which is a claim under the Magnuson-Moss Warranty Act; the Ninth Claim for Relief, which is an unjust

---

[4]That error was corrected by a *Nunc Pro Tunc* Order dated November 5, 2001.

3

enrichment claim; the Tenth Claim for Relief, which is a claim under state consumer protection statutes; the Eleventh Claim for Relief, which is a claim for breach of implied warranty; and the Twelfth Claim for Relief, which is a claim for breach of express warranty.

## B. PLAINTIFFS' MOTION TO STRIKE

The plaintiffs have filed a motion entitled Motion to Strike Certain Statements in Paragraph 8 of Affidavit of Hiroyuki Kita on the ground that the statements in question are made based upon Mr. Kita's "best knowledge," rather than his personal knowledge. While it is possible that this distinction may be important in some contexts, in this case our decision does not hinge on the strength of Mr. Kita's averments. Accordingly, the motion to strike is **denied**.

## C. FORD'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEF

On November 5, 2001, Ford filed a motion entitled Motion for Leave to File Supplemental Statement in Opposition to Bridgestone Japan's Motion to Dismiss for Want of Personal Jurisdiction. Because the other materials before the Court are more than sufficient to elucidate the issues relevant to Bridgestone's motion to dismiss, Fords' motion is **denied**, and Ford's proposed Supplemental Statement has not been considered by the Court in making this ruling.

## II. THIS COURT'S PERSONAL JURISDICTION OVER BRIDGESTONE

To survive the instant motion to dismiss, the plaintiffs (in this instance aided by defendant Ford) bear the burden of establishing by a prima facie showing that this court may properly exercise personal jurisdiction over Bridgestone. Weidner Communications, Inc. v. H.R.H. Prince Bandar Al Faisal, 859 F.2d 1302, 1306 n.7 (7th Cir. 1988) (citing Nelson by Carson v. Park Indus., Inc., 717 F.2d 1120, 1123 (7th Cir. 1983)). In addition, "the party asserting

4

jurisdiction is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record," id., and all reasonable inferences must be drawn in favor of the plaintiffs. United States Securities & Exchange Comm. v. Carrillo, 115 F.3d 1540, 1542 (11th Cir. 1997); Felch v. Transportes Lar-Mex Sa De CV, 92 F.3d 320, 327 (5th Cir. 1996); Mylan Labs., Inc. v. Akzo, N.V., 2 F.3d 56, 59-60 (4th Cir. 1993); Simpson v. Quality Oil Co., Inc., 723 F. Supp. 382, 386 (S.D. Ind. 1989). With this standard in mind--which we note is different from the preponderance of the evidence standard which will apply at trial--we address Bridgestone's motion to dismiss.

## A. APPLICABLE LAW

The question of what law this court should apply in deciding the various issues raised in Bridgestone's motion to dismiss, while somewhat complex, ultimately is well-settled. First, whether we may exercise personal jurisdiction over Bridgestone is a question of federal law. As we have noted before, for any questions of federal law about which federal circuits disagree, this court, as the transferee court, applies the law of the federal circuit in which it sits, here the Seventh Circuit. See In re Korean Air Lines Disaster of September 1, 1983, 829 F.2d 1171, 1176 (D.C. Cir. 1987) ("[T]he law of a transferor forum on a federal question merits close consideration, but does not have stare decisis effect in a transferee forum situated in another circuit."), judgment aff'd by Chan v. Korean Air Lines, Ltd., 490 U.S. 122 (1989); Eckstein v. Balcor Film Investors, 8 F.3d 1121, 1126 (7th Cir. 1993) ("We agree with Korean Air Lines that a transferee court normally should use its own best judgment about the meaning of federal law when evaluating a federal claim."). Therefore, in addition to the Supreme Court's rulings, we will look for guidance first to the Seventh Circuit's decisions on personal jurisdiction.

5

Next, as the parties agree, this court may exercise personal jurisdiction over Bridgestone to the extent that any of the transferor courts properly could. See Class Plaintiffs' Preliminary Response to Defendant Bridgestone Corporation's Motion to Dismiss Master Complaint for Lack of Personal Jurisdiction ("Preliminary Response") at 9-10 (citing In re Agent Orange Prod. Liab. Litig., 818 F.2d 145, 163 (2nd Cir. 1987)); Defendant Ford Motor Company's Statement in Opposition to Defendant Bridgestone Corporation's Motion to Dismiss the Master Complaint for Lack of Personal Jurisdiction ("Ford's Brief") at 20 n.5 (citing same); Bridgestone Corporation's Reply Brief in Support of Its Motion to Dismiss the Master Complaint for Lack of Personal Jurisdiction ("Reply Brief") at 4 n.3 (citing same and In re Showa Denko K.K. L-Tryptophan Prods. Liab. Litig.-II, 953 F.2d 162, 165-66 (4th Cir. 1992)). Because we have subject matter jurisdiction over the Master Complaint pursuant to 28 U.S.C. § 1331, by virtue of the federal Magnuson-Moss Warranty Act claim, whether any of the transferor courts has personal jurisdiction over Bridgestone for the claims asserted in the Master Complaint is governed by Federal Rule of Civil Procedure 4(k). See Graphic Controls Corp. v. Utah Medical Prods., Inc., 149 F.3d 1382, 1385 n.2 (Fed. Cir. 1998) (applying Fed.R.Civ.P. 4(k) in patent case); Weinstein v. Todd Marine Enterprises, Inc., 115 F.Supp.2d 668, 671 (E.D. Va. 2000) (citing Omni Capital, Int'l Ltd. v. Rudolf Wolff & Co., 484 U.S. 97 (1987)) (applying Rule 4(k) to claim under Magnuson-Moss Act). Rule 4(k)(1) provides, in relevant part, that a federal court may exercise jurisdiction over a defendant "who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." Accordingly, Bridgestone is subject to the personal jurisdiction of each of the transferor courts, and consequently of this court, to the extent that a state court in the state in which the transferor court sits would be able to

6

exercise personal jurisdiction over Bridgestone for the plaintiffs' claims.

The determination of whether a state court would have jurisdiction over a nonresident defendant traditionally is made by employing the following two-part inquiry: (1) whether the state's long-arm statute allows jurisdiction; and (2) whether the assertion of jurisdiction by the state would comport with constitutional due process standards. NUCOR Corp. v. Accros Y Maquilas de Occidente, S.A. de C.V., 28 F.3d 572, 580 (7th Cir. 1994). Here, Bridgestone does not argue that jurisdiction over it is precluded by the applicable state long-arm statutes, but rather contends that the assertion of jurisdiction over it by any state would violate the Due Process Clause of the Fourteenth Amendment. Brief in Support of Bridgestone Corporation's Motion to Dismiss Master Complaint ("Bridgestone's Brief") at 4 ("Because any exercise of jurisdiction over Bridgestone by this court would offend due process, no separate analysis of the potentially applicable state long-arm statutes is even necessary."). Therefore, Bridgestone has waived any argument it may have had based upon any state's long-arm statute, and we, too, will limit our analysis to the second prong of the two-part inquiry.[5]

---

[5]Bridgestone's decision not to address the application of any state's long-arm statute to it has no practical effect on our analysis, inasmuch as a quick (and by no means comprehensive) search of the law of the states in which the transferor courts are located suggests that many of them extend their exercise of personal jurisdiction to the fullest extent permitted by federal due process. See, e.g., Neal v. Janssen, ___ F.3d ___, 2001 WL 1262226, at *2 (6th Cir. 2001) (Tennessee courts construe its long-arm statute to "extend to the limits of due process."); Remick v. Manfredy, 238 F.3d 248, 255 (3rd Cir. 2001) (Pennsylvania's long-arm statute "authorizes Pennsylvania courts 'to exercise personal jurisdiction over nonresident defendants to the constitutional limits of the due process clause of the fourteenth amendment [sic.].'") (citation omitted); Gordy v. Daily News, L.P., 95 F.3d 829, 831 (9th Cir. 1996) ("California's long-arm statute extends jurisdiction to the limits imposed by the Due Process Clause."); City of Virginia Beach, Va. v. Roanoke River Basin Ass'n, 776 F.2d 484, 487 (4th Cir. 1985) ("The Supreme Court of Virginia has construed the long-arm statute to extend in personam jurisdiction to the limits of due process.") (citation omitted); Peridyne Tech. Solutions, LLC v. Matheson Fast Freight, Inc., 117 F.Supp.2d 1366, 1369 (N.D. Ga. 2000) (same as to Georgia's long-arm

7

In order for the exercise of personal jurisdiction to comport with due process, "a defendant must have purposefully established minimum contacts with the forum." Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 942-43 (7th Cir. 2000) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-76 (1985)). The critical inquiry is "whether the defendant's conduct and connection with the forum are such that it should reasonably anticipate being hailed into court there." Id. at 943.

> To establish such a reasonable anticipation the defendant must have purposefully availed itself of the privilege of conducting activities in the forum, invoking the benefits and protections of its laws. Once minimum contacts have been shown to exist, a court must examine other factors, such as the forum's interest in adjudicating the dispute and the burden on the defendant, to determine whether the exercise of personal jurisdiction satisfies traditional notions of fair play and substantial justice.

Id. (citations omitted).

Bridgestone's due process argument is not directed toward any particular state, however, but rather to the United States in general. While Bridgestone does not say so explicitly, we

------------------------------------------

statute); P.M. Enterprises v. Color Works, Inc., 946 F. Supp. 435, 438 (S.D.W.Va. 1996) (same as to West Virginia); Ex Parte McJnnis, ___ So.2d ___, 2001 WL 1346648 at *6 (Ala. 2001) (same as to Alabama); Williams v. Lakeview Co., 13 P.3d 280, 282 (Ariz. 2000) (same as to Arizona); Szalay v. Handcock, 819 S.W.2d 684, 686 (Ark. 1991) (same as to Arkansas); Davis v. Dempster, Inc., 790 So.2d 43, 46 (La. Ct. App. 2000) (same as to Louisiana); Balloon Bouquets, Inc. v. Balloon Telegram Delivery, Inc., 466 N.E.2d 523, 524 (Mass. App. Ct. 1984) (same as to Massachusetts); Kam-Tech Systems Ltd. v. Yardeni, 774 A.2d 644, 653 (N.J. Super. Ct. App. Div. 2001) (same as to New Jersey); Mony Credit Corp. v. Ultra-Funding Corp., 397 S.E.2d 757, 759 (N.C. Ct. App. 1990) (noting legislature's "intent to liberally construe the North Carolina 'long arm' statute to the limits of due process"); Rescue Tech., Inc. v. Claw, Inc., 956 P.2d 1010, 1014 (Or. Ct. App. 1998) (Oregon long-arm statute effectively "extend[s] jurisdiction to the limits of due process under the Fourteenth Amendment."); Porter v. Porter, 684 A.2d 259, 261 (R.I. 1996) (same as to Rhode Island); W. Gessmann, GmbH v. Stephens, 51 S.W.3d 329, 335 (Tex. App. 2001) (same as to Texas). In such states, the "twin inquiries collapse into one," and the court must determine only whether the exercise of jurisdiction is constitutionally permissible. NUCOR Corp., 28 F.3d at 580.

8

assume that it addresses its contacts with the United States as a whole because it realizes that even if no one state constitutionally can exercise jurisdiction over it, because it does not have sufficient minimum contacts with any one state, this court still may have jurisdiction over it pursuant to Federal Rule of Civil Procedure 4(k)(2). Rule 4(k)(2) provides for personal jurisdiction as to federal claims[6] over defendants who are not subject to the jurisdiction of any state "[i]f the exercise of jurisdiction is consistent with the Constitution and laws of the United States." When, as here, "[a] defendant contends that [it] cannot be sued in the forum state and refuses to identify any other [state] where suit is possible, then the federal court is entitled to use Rule 4(k)(2)." ISI Int'l, Inc. v. Borden Ladner Gervais LLP, 256 F.3d 548, 552 (7th Cir. 2001). None of the parties explicitly recognize that Rule 4(k)(2), rather than Rule 4(k)(1), applies in this case. However, this is ultimately a distinction without a difference, because applying Rule 4(k)(2) leads us, in the end, to the same analysis as that performed by the parties in their briefs: whether Bridgestone's contacts with the United States, as a whole, are such that a federal district court could exercise jurisdiction over it without offending due process.[7]

As promised, this long and winding road has finally led us to the following

---

[6] If personal jurisdiction over Bridgestone vis-à-vis the federal claim is appropriate, the Court also can exercise personal jurisdiction as to the state claims under the doctrine of pendent personal jurisdiction. See Robinson Engineering Co., Ltd. Pension Plan & Trust v. George, 223 F.3d 445, 449-50 (7th Cir. 2000) (recognizing and applying the doctrine of pendent personal jurisdiction).

[7] One difference is that when Rule 4(k)(1) applies, the question is whether a state's exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment, while under Rule 4(k)(2), the analysis is whether a district court's exercise of jurisdiction would violate the Due Process Clause of the Fifth Amendment. Again, however, this distinction is irrelevant for all practical purposes; the Court has found no authority holding that the two analyses differ in any way.

9

straightforward and undisputed statement of the issue before this court: Have the plaintiffs satisfied their burden of making a prima facie showing that Bridgestone's contacts with the United States are such that this court may, consistent with the federal constitutional right to due process, exercise personal jurisdiction over it as to the plaintiffs' claims asserted (and remaining) in the Master Complaint? The plaintiffs (and Ford) pose three alternative theories under which they argue the exercise of personal jurisdiction is appropriate: (1) Bridgestone's contacts with the United States are sufficient to permit this court to exercise general jurisdiction over it; (2) Bridgestone's contacts with the United States are such that this court may exercise specific jurisdiction over it as to the claims asserted in the Master Complaint; and (3) The contacts of Firestone, Bridgestone's wholly-owned subsidiary, with the United States may be imputed to Bridgestone for jurisdictional purposes. Because we conclude that the plaintiffs (and Ford) have made a prima facie showing that this court constitutionally may exercise general jurisdiction over Bridgestone, we need not, and do not, address the two remaining theories.

## B. GENERAL JURISDICTION

The Supreme Court has recognized two distinct types of personal jurisdiction: specific and general. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984). A court may exercise specific jurisdiction over a defendant that has certain minimum contacts with the relevant forum when the controversy before the court "is related to or 'arises out of' [the] defendant's contacts with the forum." Id. at 414 (citation omitted). However, "[e]ven when the cause of action does not arise out of or relate to the foreign corporation's activities in the forum State, due process is not offended by a State's subjecting the corporation to its in personam jurisdiction when there are sufficient contacts between the State and the foreign corporation." Id.

10

(footnote and citations omitted). In such general jurisdiction cases, the contacts between the defendant and the relevant forum must be "continuous and systematic" in order for the exercise of personal jurisdiction to be constitutionally permissible. Id. at 415 (citing Perkins v. Benguet Consol. Mining Co., 342 U.S. 437 (1952)). The overriding principle always is whether the maintenance of the suit against the defendant would "offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (citation omitted). There is no rigid test employed to make this determination; rather, "[t]he amount and kind of activities which must be carried on by the foreign corporation in the state of the forum so as to make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined in each case." Perkins, 342 U.S. at 445. Therefore, we must examine Bridgestone's[8] contacts with the relevant forum, in this case the United States, to determine whether they rise to the level of "continuous and systematic."[9] We find that the plaintiffs (and Ford) have made a prima facie case that they do.

As evidence that it does not have continuous and systematic contacts with the United States,[10] Bridgestone submits the affidavit of Hiroyuki Kita, manager of Bridgestone's Corporate

---

[8]Of course, as a corporation, Bridgestone "creates contacts for personal jurisdiction purposes through its authorized representatives: its employees, directors, officers, and agents." Kuenzle v. HTM Sport-Und Freizeitgerate AG, 102 F.3d 453, 458 (10th Cir. 1996) (citing International Shoe, 326 U.S. at 316).

[9]Even in cases in which a defendant has sufficient minimum contacts with the forum, it is still possible that the exercise of personal jurisdiction will be impermissible because it would "offend traditional notions of fair play and substantial justice." International Shoe Co., 326 U.S. at 316. Bridgestone does not argue that this is the case here; rather, it confines its argument to the issue of whether its contacts with the United States are sufficient.

[10]Bridgestone argues that any of its contacts after the August 2000 recall are irrelevant for jurisdictional purposes, because "[t]his Court's power to exercise jurisdiction over a defendant

Legal Department. Paragraph 8 of Mr. Kita's affidavit asserts:

> Bridgestone Corporation is not licensed to do business in any state and does not maintain a registered agent or officer for service of process in any state. Bridgestone Corporation does not transact business in any state. It does not contract to supply goods or services in any state. Bridgestone Corporation also does not engage in any other persistent course of conduct in, or derive substantial revenue from goods used or consumed or services rendered in, any state.[11] Moreover, to my best knowledge: (i) Bridgestone Corporation maintains no offices, post office boxes, places of business, or telephone listings in any state. (ii) Bridgestone Corporation has no real estate, bank accounts or other interest in property in any state, and has not had real estate, bank accounts or other interest in property in any state. (iii) It has not incurred any obligation to pay, and has not paid, any taxes in any state. (iv) It does not have employees in any state and has not recruited any employees from any state. (v) Bridgestone Corporation has not conducted any advertising,[12] solicitation, service, marketing or other sales promotions in any state. (vi)

--------------------------------------------------

consistent with constitutional due process is determined by the defendant's contacts with the forum at the time of the events that gave rise to the claim alleged in the complaint, not later." Reply Brief at 28 (citing Tomar Electronics, Inc. v. Whelen Technologies, Inc., 819 F. Supp. 871, 876 (D. Ariz. 1992)). However, the Seventh Circuit expressly has found that contacts with the forum that occurred between the time the cause of action accrued and the date the complaint was filed can be relevant to the jurisdictional analysis. See Logan Productions, Inc. v. Optibase, Inc., 103 F.3d 49, 53 (7th Cir. 1996). A simple example demonstrates that this is the case, at least for general jurisdiction purposes. Imagine that Mr. Brown was involved in an automobile accident with Ms. Green in Florida in 1998. At the time of the accident, Mr. Brown had never had any contacts with Indiana. However, one month after the accident, Mr. Brown moved to Indiana and established his residency there. Obviously, Mr. Brown would then be subject to the general jurisdiction of courts in Indiana, and if Ms. Green chose to file suit against him in Indiana alleging negligence in the Florida accident, there would be no personal jurisdiction impediment to her doing so.

[11]"This statement must come as a surprise to Bridgestone's shareholders, especially in light of Bridgestone's 1998 Annual Report, which reported that Bridgestone's sales in the Americas (which, of course, includes the United States) amounted to a consolidated operating profit of $546 million and accounted for 31.1% of its "total operating profit before eliminations for consolidation." See Exhibit F to Plaintiffs' Preliminary Response. These sales figures include sales made in the United States by Firestone, of course, and not Bridgestone itself, but Bridgestone certainly appears to have "derive[d] substantial revenue" from Firestone's U.S. sales.

[12]In fact, Bridgestone subsequently stated in its response to the plaintiffs' interrogatories that "during the course of its investigation to respond to these interrogatories, it believes it has identified a single instance [in the January 2000 issue of *Forbes* magazine] in which Bridgestone

12

Bridgestone Corporation has not designed, manufactured, sold, advertised, delivered, or issued warranties on any good or product in any state, nor has it participated in the decision to sell or deliver any good or product to any state. (vii) At no time relevant to this lawsuit has Bridgestone Corporation entered into a contract in any state or committed any tort, in whole or in part, in any state.

Kita Affidavit, Exhibit 1 to Bridgestone's Motion to Dismiss Master Complaint. Mr. Kita further asserts in paragraph 14 of his affidavit that Bridgestone "does not maintain an interactive web site to solicit business from the United States and does not solicit business for or on behalf of Firestone." Finally, in the remainder of his affidavit, Mr. Kita asserts that Bridgestone's and Firestone's "daily operations" are separate, that the two corporations observe all appropriate corporate formalities, and that Bridgestone "did not market or sell in the United States the Firestone tires that are at issue in the subject lawsuit."

Mr. Kita's affidavit paints a picture of Bridgestone as a Japanese corporation which, aside from owning all of the stock of Firestone, a U.S. corporation, has no contact at all with the United States. The evidence submitted by the plaintiffs and Ford paints a very different picture of Bridgestone, however. Bridgestone is not a parent corporation that sits idly by reaping profits from its investment, Firestone. Rather, the evidence of record indicates that Bridgestone actively conducts business with Firestone and others in the United States on a regular basis in a variety of ways.[13] The plaintiffs and Ford have made a prima facie showing of at least the following

_____

placed an advertisement in the United States." Bridgestone's Response to Plaintiffs' Interrogatory No. 10 served February 16, 2001, Exhibit 1 to Declaration of Brian D. Boyle in Support of Ford's Brief.

[13]The plaintiffs and Ford argue that Bridgestone does more than conduct business with Firestone, but actually controls Firestone to such a degree that Firestone's actions can be imputed to Bridgestone for both jurisdictional, and presumably liability, purposes. If a parent corporation exercises "an unusually high degree of control over [its] subsidiary," personal jurisdiction over the parent may be premised upon the subsidiary's contacts with the relevant forum. Central

13

activities by Bridgestone in or directed to the United States:[14]

1.    <u>Bridgestone utilizes Firestone to both manufacture and sell Bridgestone brand tires in the United States.</u> John Lampe, CEO of Firestone, testified that Firestone "is responsible for the sales of Bridgestone branded consumer tires and light truck tires in the United States replacement market and Bridgestone truck tires both in the replacement market and in the original equipment market" and that Firestone "manufactured Bridgestone branded tires in I believe all of our tire facilities, and we do import Bridgestone branded tires as well as Firestone branded tires from Japan." Lampe Deposition at 236, Exhibit G to Class Plaintiffs' Final Response to Bridgestone Corporation's Motion to Dismiss Master Complaint ("Final Response"); <u>see also</u> Bridgestone's Response to Plaintiffs' Interrogatory No. 12 served February 27, 2001 (hereinafter referred to as "Response to Plaintiffs' Second Set of Interrogatories, No. ___"), Exhibit 1 to Declaration of Brian D. Boyle in Support of Ford's Brief ("Boyle Dec.") (Bridgestone designed Bridgestone brand tires that are manufactured by Firestone). This testimony regarding Firestone's responsibility to its parent lends support to the plaintiffs' and Ford's argument that Firestone acts as Bridgestone's agent in the manufacture

_____

<u>States</u>, 230 F.3d at 943. Because we find the evidence of Bridgestone's own contacts with the United States sufficient to support our exercise of general jurisdiction, we do not address at this stage the issue of whether jurisdiction also could be based upon Bridgestone's alleged control of Firestone. The plaintiffs may, of course, pursue this contention at trial.

[14]The Court has carefully reviewed all of the voluminous materials submitted by the various parties. The record citations that follow constitute a representative sample of the evidence contained in those materials.

and sale of Bridgestone tires in the United States, and to the extent that Firestone

was acting as Bridgestone's agent, its contacts with the United States may be

imputed to Bridgestone.[15] See IDS Life Ins. Co. v. SunAmerica Life Ins. Co., 136

F.3d 537, 541 (7th Cir. 1998) (stating, in personal jurisdiction context, that "[i]f

the subsidiaries were acting as SunAmerica's Illinois agent in the sense of

conducting SunAmerica's business rather than their own business, the parent

could be sued" because "a corporation should not be able to insulate itself from

the jurisdiction of the states in which it does business by the simple expedient of

separately incorporating its sales force and other operations in each state");

Donatelli v. National Hockey League, 893 F.2d 459, 466 (1st Cir. 1990)

("Sometimes, the parent has utilized the subsidiary in such a way that an agency

relationship between the two corporations can be perceived--and that is enough.);

Gallagher v. Mazda Motor of America, Inc., 781 F. Supp. 1079, 1085 (E.D. Pa.

---

[15]This is not the same as piercing the corporate veil between Bridgestone and Firestone; nor does it have the same consequences. "Despite the fact that corporate entities are distinct and their veils unpierced, courts can--and usually do--make an actual inquiry into the nature of the interrelationship before abandoning the jurisdictional quest." Donatelli, 893 F.2d at 465; see also IDS Life Ins. Co., 136 F.3d at 541 (noting a "broader principle" than piercing the veil is involved when examining whether a subsidiary operates as an agent of its parent in the relevant forum). Indeed, it is not the parent/subsidiary relationship that is important; the same analysis would apply if a corporation employed an unrelated corporation or person as its agent in the relevant forum. See, e.g., Kuenzle v. HTM Sport-Und Freizeitgerate AG, 102 F.3d 453 (10th Cir. 1996). If the corporate veil were pierced, all of Firestone's actions could be imputed to Bridgestone for jurisdictional purposes; the two companies would be treated as one for legal purposes. However, if the plaintiffs ultimately prove that Firestone acted as Bridgestone's agent in the manufacture and sale of Bridgestone brand tires in the United States, regardless of whether Bridgestone controlled other aspects of Firestone's business, the actions taken by Firestone in this capacity as Firestone's agent would be considered the actions of Bridgestone for jurisdictional (and, if relevant, for liability) purposes.

15

1992) ("[I]f a parent uses a subsidiary to do what it otherwise would have done itself, it has purposefully availed itself of the privilege of doing business in the forum. Jurisdiction over the parent is therefore proper."). The manufacturing and sales of these tires certainly constitute considerable contacts in and with the United States; indeed, depending on the number of Bridgestone brand tires manufactured in the United States and the amount of the sales made here (information which the Court does not have before it at this time), it is possible that general jurisdiction could be premised on these facts alone. See LSI Indus. Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000) ("Based on [the defendant's] millions of dollars of sales of lighting products in Ohio over the past several years and its broad distributorship network in Ohio, we find that Hubbell maintains 'continuous and systematic' contacts with Ohio . . . [and therefore] is subject to general jurisdiction in Ohio under the Due Process Clause."). Further, regardless of whether the plaintiffs ultimately can show an agency relationship by a preponderance of the evidence, it is at least reasonable at this stage to infer that Bridgestone has regular contacts with Firestone, and therefore with the United States, arising out of Firestone's manufacture of Bridgestone brand tires here.

2.    During the years 1994-2000, Bridgestone sold tires to Firestone and four other

16

U.S. corporations[16] for resale in the United States.  Bridgestone asserts that its

sales of tires to U.S. companies are irrelevant for jurisdictional purposes because

it does not sell the tires here itself.  Rather, it sells its tires to Firestone and the

other U.S. companies in Japan, and "exercises in principle no control over where

and to whom such tires are sold" by its buyers.  Supplemental Affidavit of

Hiroyuki Kita at ¶ 5, Exhibit A to Plaintiffs' Final Response.  Regardless of where

the title to the tires technically passes, however, it is reasonable to infer that

Bridgestone's regular sales to U.S. corporations involve contacts with those U.S.

companies, and therefore contacts with the United States.  While those contacts

alone may not be sufficient to constitute the "systematic and continuous" contacts

required for general jurisdiction, they certainly are relevant to the general

jurisdiction analysis.

3.    Bridgestone manufactures Firestone brand tires for sale in the U.S. replacement

tire market, including some of the models of tires at issue in this litigation.  See

Bridgestone's Response to Plaintiffs' Interrogatory No. 1 served February 16,

2001 (hereinafter referred to as "Response to Plaintiffs' First Set of

Interrogatories, No. ___"), Exhibit 1 to Boyle Dec.; Excerpts of Deposition of

Hideo Hara, Exhibit 71 to Boyle Dec.  Again, the fact that Bridgestone

manufactures and sells Firestone brand tires is further evidence that, in the course

of  the relationship between the two companies, Bridgestone has regular contacts

---

[16]Servco Pacific, Inc., PIC Inc., Thompson Aerospace Corporation, and Bridgestone
Aircraft Tire (USA), Inc.

with the United States.[17]

4. <u>Bridgestone contracts with Bridgestone/Firestone Research, Inc. to conduct research within the United States.</u> See Response to Plaintiffs' First Set of Interrogatories, No. 4, Exhibit 1 to Boyle Dec.  Regardless of where the contract physically was executed, this contractual relationship between Bridgestone and a U.S. corporation involving performance in the United States constitutes contacts with the United States.  See <u>Madison Consulting Group v. South Carolina,</u> 752 F.2d 1193, 1204 (7th Cir. 1985) (finding plaintiff's performance of the contract at issue within the forum, as contemplated by the defendant at the time of contracting, to be "another meaningful contact" between defendant and the forum).

5. <u>Bridgestone and Firestone regularly and routinely exchange technology and engineering information with one another.</u> See, e.g., Deposition of Robert Wyant, Exhibit A to Final Response, at 307-09 (discussing regularly scheduled meetings between Bridgestone and Firestone to exchange information and technology); Excerpts from Deposition of Hideo Hara, Exhibit H to Final Response (discussing exchange of technology); Deposition of Hideo Hara, Exhibit 19 to Class

---

[17]We are not relying on the fact that tires manufactured by Bridgestone, under both the Bridgestone and the Firestone brand names, are sold throughout the United States, inasmuch as the "stream of commerce" theory is relevant to specific jurisdiction, not general jurisdiction. See, e.g., <u>Alpine View Co., Ltd. v. Atlas Coco AB,</u> 205 F.3d 208, 216 (5th Cir. 2000) ("We have specifically rejected a party's reliance on the stream-of-commerce theory to support asserting general jurisdiction over a nonresident defendant.").  The stream of commerce and specific jurisdiction analysis will be relevant, however, as to the claims of any plaintiff who owned an allegedly defective tire that was, in fact, manufactured by Bridgestone.

18

Plaintiffs' Third Supplement to Jurisdictional Evidence Regarding Bridgestone

Corporation ("Third Supp."), at 125 (same); id. at 128-29 (discussing Bridgestone

engineers' visits to Firestone plants in the U.S.); Deposition of James Gardner,

Exhibit 31 to Third Supp.,  at 61-63 (discussing exchange of technical information

between Bridgestone and Firestone); Exhibits 3, 5, 8, 34-37, 54, 62 to Boyle Dec

(examples of Bridgestone and Firestone cooperating on technical matters and

exchanging technical and engineering information).  These visits, meetings and

other communications between Bridgestone and Firestone personnel constitute

regular contacts with the United States.[18]

6.     Bridgestone and Firestone regularly and routinely exchange business information

       and otherwise coordinate their business activities in a variety of areas.  See, e.g.,

       Deposition of John Lampe, Exhibit I to Final Response, at 75 (discussing

       Firestone employees whose job responsibilities include communication with

       Bridgestone); Deposition of John Lampe, Exhibit G to Final Response, at 227-30

       (discussing committee with the responsibility of coordinating "Bridgestone's

---

[18]Bridgestone cites numerous cases for the proposition that such contacts and
communications between a parent and a subsidiary, as well as the exchange of employees, are
normal and do not support a finding that the parent exercises such control over the subsidiary that
the corporate veil should be pierced.  See Reply Brief at 6 (citing IDS Life Ins. Co., 136 F.3d at
540; Doe v. Unocal Corp., 248 F.3d 915, 927 (9th Cir. 2001); Central States, 230 F.3d at 945;
Dean v. Motel 6 Operating L.P., 134 F.3d 1269, 1274 (6th Cir. 1998)); id. at 8 (citing Fidenas AG
v. Honeywell, Inc., 501 F. Supp. 1029, 1037 (S.D.N.Y. 1980); Salon Group, Inc. v. Salberg, 156
F. Supp.2d 872, 877 (N.D. Ill. 2001); Hopper v. Ford Motor Co. Ltd., 837 F. Supp. 840, 844
(S.D. Tex. 1993); Snowden v. Connaught Labs. Inc., 793 F. Supp. 1040, 1044 (D. Kan. 1992)).
However, none of these cases stands for the proposition that a parent corporation's contacts with
its subsidiary in the relevant forum are irrelevant to the general jurisdiction analysis, or that a
parent corporation cannot be subject to general jurisdiction based upon its continuous and
systematic contacts with its subsidiary in the forum.

19

global business with the OE [original equipment] accounts" between Bridgestone
and its worldwide subsidiaries, including Firestone); Exhibit 25 to Boyle Dec.
(memo regarding "OE Global Meeting"); Deposition of John Behr, Exhibit 13 to
Third Supp., at 503-16 (discussing his contacts with Bridgestone in his capacity as
Firestone's account executive for the Ford account); Exhibits 6-7 to Boyle Dec.
(examples of Bridgestone and Firestone sharing confidential business
information); Exhibits 10, 16-24 to Boyle Dec. (examples of monthly reports sent
from Firestone to Bridgestone and Bridgestone's follow-up questions regarding
those reports); Exhibit 32 to Third Supp. (describing travel by various Bridgestone
employees to the United States between 1994 and 2000); Exhibit 14 to Boyle Dec.
(memo regarding visit by Bridgestone employee to Firestone).

7.  Bridgestone employees are sent by Bridgestone to work for Firestone in the
United States, several Bridgestone executives have served on Firestone's Board of
Directors, and Bridgestone asked John Lampe to assume the position of Firestone
CEO. See Deposition of John Lampe, Exhibit G to Plaintiffs' Final Response, at
146–47 (discussing Bridgestone employees sent to "run" Firestone); id. at 147
(Bridgestone asked Lampe to consider assuming position of Firestone CEO);
Response to Plaintiffs' First Set of Interrogatories, No. 6, Exhibit 1 to Boyle Dec.
(identifying directors, officers, and board members of Bridgestone and Firestone
between 1994 and 2000); Response to Plaintiffs' First Set of Interrogatories, No.
16, Exhibit 1 to Boyle Dec. (identifying five individuals who served as directors
of Bridgestone while employed by Firestone); Deposition of Harry MacMillan,

20

Exhibit 25 to Third Supp., at 69-75, 134 (discussing the practice of "advisers" from Bridgestone working at Firestone plants in the United States). While this exchange of employees and overlap of high-level executives is not necessarily evidence that Bridgestone controls Firestone, and certainly is not enough, by itself, to support piercing the corporate veil, see United States v. Bestfoods, 524 U.S. 51, 69 (1998), it certainly is convincing evidence of the extensive amount of contact between the two companies. Further, while Bridgestone emphasizes that the Japanese expatriates who come to the United States from Bridgestone become employees of Firestone, the fact that Bridgestone sends its employees to work in the United States on a regular basis constitutes further evidence of Bridgestone's regular and extensive contacts with Firestone, and therefore with the United States.

8.    Bridgestone Executives have met with Ford in the United States on at least two occasions. See Deposition of Jacques Nasser, Exhibit 14 to Third Supp., at 407 (describing meeting between Nasser, then-CEO of Ford, and Yoichiro Kaizaki, then-CEO of Bridgestone, in the United States in early 2000 to discuss "general business matters" between Bridgestone and Ford); Exhibit 32 to Boyle Dec. (memo regarding 1996 meeting between Ford, Mr. Kaizaki, then President of Bridgestone, and others, in the United States "[t]o discuss relevant business issues and to reaffirm our commitment as a 1st class global partner"). While these meetings alone certainly are not sufficient to establish general jurisdiction, they certainly may be considered as part of the overall picture of Bridgestone's

21

contacts with the United States.

9.    <u>Bridgestone has had contacts with the United States through its involvement with auto racing.</u>  Bridgestone describes its involvement with auto racing in the United States in the years 1994 to 2000 as follows:

> Bridgestone was involved in the design, development and manufacturing of racing tires for the IRL and CART series and sold these racing tires to Firestone in Japan.  Further, Bridgestone supplied racing tires in the United States for the 2000 Formula One championship race in Indianapolis, and supplied racing tires in the United States to certain contracted teams for the 1997 and 1998 FIA-GT championship automobile races held in the United States for (1) the IRL and CART series automobile racing leagues during the years 1994-2000 and (2) the FIA-GT championship Le Mans 24 hour automobile race in 1999.

Response to Plaintiffs' First Set of Interrogatories, No. 23, Exhibit 1 to Boyle Dec.  Again, were these contacts Bridgestone's only contacts with the United States, they clearly would not be sufficient to justify the exercise of general jurisdiction over Bridgestone.  However, these contacts do serve as further examples of Bridgestone doing business in, and having contact with, the United States.

Based upon the evidence set forth above, we are of the view that the plaintiffs (and Ford) have clearly satisfied their burden of making a prima facie showing that Bridgestone has the type of "continuous and systematic" contacts with the United States necessary for this court to exercise general jurisdiction over it within constitutional boundaries.

The cases cited by Bridgestone on the issue of general jurisdiction do not dictate a different result, as none of the defendants in those cases had the type of contacts with the relevant forum that Bridgestone has had with the United States.  For example, in <u>Hall</u>, the defendant's

insufficient contacts with the relevant forum (Texas) were summed up by the Supreme Court as follows:

> Basically, Helicol's contacts with Texas consisted of sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from Bell Helicopter for substantial sums; and sending personnel to Bell's facilities in Fort Worth for training.

Hall, 466 U.S. at 1873. The Court concluded that the defendant's acceptance of checks drawn on a Texas bank was "of negligible significance for purposes of determining whether [the defendant] had sufficient contacts in Texas." Id. The Court also concluded that, aside from the CEO's one meeting in Texas, all of the defendant's remaining contacts with Texas related to their purchase of goods and training services from a Texas company, and held that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." Id. at 418. Bridgestone's contacts with the United States clearly amount to more than the single meeting and regular purchases that the Court found insufficient in Hall.

Similarly, in Glass v. Kemper Corp., 930 F. Supp. 332, 338 (N.D. Ill. 1996), the defendant's contacts with Illinois were described by the court as follows:

> Oberst's physical presence in Illinois was sporadic. He came to Illinois once to interview with Kemper Financial; once for a week-long job orientation for Kemper Financial; and several times per year, for one or two days at a time, to attend board meetings. Oberst's other contacts with Illinois were more regular, but still relatively insubstantial. Oberst occasionally had telephone conversations with and wrote letters to Kemper Financial, Kemper, and Prime employees in Illinois. He also maintained a banking relationship with First Chicago in Illinois.

These contacts, too, are far less substantial than Bridgestone's contacts with the United States.

See also IDS Life Ins. Co., 136 F.3d at 540 (defendant's advertising in national media that is seen

<div align="center">23</div>

in Illinois, borrowing money from Chicago bank, and having security interest in Illinois property does not constitute "doing business" under Illinois long arm statute); C.R. Bard Inc. v. Guidant Corp., 997 F. Supp. 556, 561 (D. Del. 1998) (holding that defendant's maintenance of a website providing information about its products and fact that defendant's name was used on California subsidiary's cartons and promotional materials shipped to Delaware did not constitute "persistent course of conduct" by defendant in Delaware).

In contrast to the cases cited by Bridgestone in which the contacts necessary for general jurisdiction were lacking, the evidence of record, viewed in the light most favorable to the plaintiffs, demonstrates that Bridgestone has continuous and systematic contacts with Firestone and others in the United States and that those contacts are an important part of Bridgestone's business. In light of these contacts, it is neither unreasonable nor unfair to subject Bridgestone to the general jurisdiction of this court.[19]

## CONCLUSION

The plaintiffs and Ford have submitted sufficient evidence to establish a prima facie case in support of this court's exercise of general personal jurisdiction over Bridgestone for the claims remaining in the Master Complaint. Accordingly, Bridgestone's motion to dismiss for lack of

---

[19]The Court notes that several state courts recently have denied motions to dismiss for lack of personal jurisdiction filed by Bridgestone. See, e.g., In Re: Bridgestone/Firestone & General Motors Corp. Tire Cases, No. 01MD-3 (Circuit Court of Davidson County, Tenn., August 10, 2001), Exhibit 7 to Third Supp.; McDaniel v. Bridgestone/Firestone, Inc., No. 01-CP-25-160 (Court of Common Pleas of 14th Judicial Circuit, S.C., July 18, 2001), Exhibit 2 to Third Supp.; Gregory v. Bridgestone/Firestone, Inc., No. 00-C-1583 (Circuit Court of Ohio County, W. Va., June 4, 2001), Exhibit 1 to Third Supp. A federal district court in California has similarly ruled. Smith v. Bridgestone/Firestone, No. CV 00-12718-GHK (JWJx) (C.D. Cal. March 29, 2001), Exhibit 6 to Third Supp. Bridgestone's motion to reconsider that ruling was denied on May 7, 2001.

24

personal jurisdiction must be **DENIED**.[20]

ENTERED this _____ day of November 2001.

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Irwin B Levin
Cohen & Malad
136 North Delaware Street
P O Box 627
Indianapolis, IN 46204

William E Winingham
Wilson Kehoe & Winingham
2859 North Meridian Street
P.O. Box 1317
Indianapolis, IN 46206-1317

Randall Riggs
Locke Reynolds LLP
201 N. Illinois St., Suite 1000
P.O. Box 44961
Indianapolis, IN 46244-0961

---

[20]Of course, the plaintiffs still retain the burden of ultimately proving the necessary jurisdictional facts by a preponderance of evidence, and while the Court has not addressed the issue of specific jurisdiction or the plaintiffs' assertion that Firestone's actions may be imputed to Bridgestone because of its control of Firestone in ruling on the instant motion, the plaintiffs are in no way precluded from pursuing these alternative arguments at trial.

25

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| JORGE ALBERTO FLORES, et al. | § |
|     (Plaintiffs herein) | § |
| | § |
| | §CIVIL ACTION NO. B-02-216 |
| vs. | § |
| | § |
| FORD MOTOR COMPANY; et al. | § |
| | § |
|     (Defendants herein) | § |

## **AFFIDAVIT OF BRADFORD P. KLAGER**

BEFORE ME, the undersigned authority, on this day personally appeared Bradford P. Klager, who being by me duly sworn, deposed, and stated as follows:

"My name is Bradford P. Klager. I am of sound mind. I am over eighteen (18) years of age, and have never been convicted of a felony crime or other crime involving moral turpitude. I am fully competent to make this affidavit. The following facts are true and correct and are within my personal knowledge."

"On April 9, 2003, I viewed and printed Exhibit B, true and correct copies of images posted on the website of Titan International, Inc., located at www.titan-intl.com,

On April 1, 2003, I viewed and printed Exhibit C, a true and correct copy of the corporate record for Titan Tire Corporation of Texas."

Further affiant sayeth not.

_____
Bradford P. Klager

SWORN AND SUBSCRIBED TO on this the _10_ day of April, 2003, as witness whereof is set my hand and seal of office.

_____
Notary Public, State of Texas

PRISCILLA ESQUEDA
Notary Public
STATE OF TEXAS
My Comm. Exp. 04 -07- 2004

Titan International, Inc.- Wheel - Tire, Agriculture, Construction                    Page 1 of 1



## TITAN WHEEL CORPORATION    TITAN TIRE CORPORATION

**Download the latest Netscape or Microsoft Explorer
if your browser does not support frames!**



Exhibit "B"





# Stockholder Information

## Common Stock Data

Titan's common stock is listed and traded on the New York Stock Exchange under the symbol TWI.

## Independent Accountants

PricewaterhouseCoopers LLP
800 Market Street
St. Louis, MO 63101

## Transfer Agent and Registrar for Common Stock

Computershare Investor Services LLC
P.O. Box A 3504
Chicago, IL 60690-3504

Stockholder Information
(312) 360-5380

## Investor Information

Securities analysts, portfolio managers and representatives of financial institutions seeking financial information may contact:

Investor Relations Department
Titan International, Inc.
2701 Spruce Street
Quincy, IL 62301
(217) 228-6011

Investor information is also available on the company website:
www.titan-intl.com.

## Annual Meeting of Stockholders

Thursday, May 17, 2001
11:00 am Central time
Holiday Inn Quincy
201 South 3rd Street
Quincy, IL 62301



2000 Annual Report • xiii

# Board of Directors



### Erwin H. Billig
Chairman of the Board

Mr. Billig is chairman of MSX International and previously serve as vice chairman of MascoTech. He is also a director and vice chairman of Delco Remy International.

(a,c)



### Edward J. Campbell

Mr. Campbell was employed for 27 years by Tenneco. He spent 13 of those years as president of Newport News Shipbuilding Company, and 14 years at J.I. Case, three of those (1992-94) as president.

(b,c)



### Richard M. Cashin Jr

Mr. Cashin was president of Citico Venture Capital, Ltd., where he wa employed from 1980 until April 2000. He is also a director of Fairchild Semiconductor, Delco Remy and several other major corporations.

(a,b,c)



### Albert J. Febbo

Mr. Febbo retired from GE as vice president of corporate marketing and a corporate officer. Currently, he serves as a director of Med Panel.com.

(b,c)



### Mitchell I. Quain

Mr. Quain is global head of the Industrial Manufacturing Group at ING Barings LLC. He is also a director of MagneTek, Inc., Mechanical Dynamics, Inc. and Strategic Distribution, Inc.

(b,c)



### Anthony L. Soave

Mr. Soave is president, CEO and founder of Soave Enterprises LLC, a Detroit-based holding company which owns and operates businesses in distribution, environmental, and metals recycling, as well as other diversified industries.

(a,b,c)



### Maurice M. Taylor Jr.
President and CEO

Mr. Taylor has been president and chief executive officer of Titan since the 1990 acquisition, and before that had a significant role in the development of the company.

(a)



### Corporate Officers

Erwin H. Billig
Chairman of the Board
Maurice M. Taylor Jr.
President & Chief Executive Officer
J. Michael A. Akers
Vice President
Kent W. Hackamack
Vice President of Finance & Treasurer
Cheri T. Holley
Vice President, Secretary & General Counsel

(a) Member of Executive Committee   (b) Member of Audit & Oversight Committee   (c) Member of Compensation Committee



## Brownsville is an important link to the ATV aftermarket

Titan's newest tire facility in Brownsville, Texas, has become a key component in ATV aftermarket product development. Several sizes of ATV tires have already been released to production in Brownsville. The on-site testing grounds in Brownsville allow Titan to bring cutting edge technology to the market. Brownsville also provides a materials cost advantage due to its proximity to many petroleum-based component suppliers. This cost savings will be particularly important for maintaining margins in the face of increasing competition from Asian tire manufacturers. Throughout 2001, more of Titan's ATV tire production will occur at the Brownsville location. Likewise, our newest ATV designs will ultimately be tested and produced at that facility.

Two of the most popular special purpose ATV tire categories are utility and mud. In response, Titan is spinning out second generation designs of the popular AT 489 and AT 589 tires in the first quarter of 2001. The 489 X/T and 589 M/T will be offered with six-ply rated construction and design enhancements to provide the ultimate in ride and traction. As the ATV manufacturers re-enter the sport market, Titan is evaluating new designs to be presented for development consideration early in 2001. Titan will continue to gain market share by exploring new distribution channels and developing innovative products.

Titan's highway products serve boat and recreational vehicle trailers, livestock trailers, travel and flatbed trailers. The recently introduced Radial ST II design is generating considerable attention for its smooth ride, even wear and enhanced durability. This new tire is offered in the largest size and highest load carrying capacity available in the tire industry. In addition to wheel and tire assemblies, Titan offers brakes, actuators, hubs and couplers for trailers. Trailer manufacturers are increasingly shifting from drum brake actuators to disk brake actuators. Titan's disk brake actuators are, subsequently, gaining popularity and, in response to this trend, Titan plans to extend the current product offering to include disk brakes within the next year. Working closely with our trailer customers allows Titan to offer assemblies and components that address the industry's requirements.



$175.5  $161.5  $158.9  $154.3
$97.4

'00   '99   '98   '97   '96

**Net Sales (In Millions)**



2000 Annual Report · xi

33249942313

33249942313
**CORPORATE RECORDS & BUSINESS REGISTRATIONS**

This Record Last Updated:03/03/2003
Database Last Updated:03-31-2003
Update Frequency:Daily
Current Date:04/01/2003
Source:As reported by the Secretary of State or
other official source

**COMPANY INFORMATION**

Name:TITAN TIRE CORPORATION OF TEXAS
Address:6700 PAREDES LINE RD
BROWNSVILLE, TX 78521

**FILING INFORMATION**

Filing Date:05/21/1997
State of Incorporation:Texas
Date Incorporated:05/21/1997
Duration:Perpetual
Status:IN EXISTENCE
Business Type:Domestic Corporation
Address Type:Mailing
Registration ID#:0144601800
Where Filed:SECRETARY OF STATE
1019 BRAZOS ST
AUSTIN, TX 78701

**REGISTERED AGENT INFORMATION**

Agent Name:TITAN WHEEL INTERNATIONAL, INC.
Address:6700 PAREDES LANE RD.
BROWNSVILLE, TX 78520

**PRINCIPAL INFORMATION**

Name:MAURICE M TAYLOR JR
Title:President
Address:2701 SPRUCE ST
QUINCY, IL  62301
Name:CHERI T HOLLEY
Title:Secretary
Address:2701 SPRUCE ST
QUINCY, IL  62301
Name:KENTH HACKAMACK
Title:Treasurer
Address:2701 SPRUCE ST
QUINCY, IL  62301
Name:KENTH HACKAMACK

Exhibit    "C"

```
                    Title:Director
                    Address:2701 SPRUCE ST
                    QUINCY, IL  62301
                    Name:MARUICE M TAYLOR
                    Title:CHAIRMAN
                    Address:2701 SPRUCE ST
                    QUINCY, IL  62301
                    Name:MARUICE M TAYLOR
                    Title:Director
                    Address:2701 SPRUCE ST
                    QUINCY, IL  62301
```

### AMENDMENT INFORMATION

```
                    Amendments:03/03/2003 Miscellaneous; PUBLIC
                    INFORMATION REPORT (PIR)
                    12/31/2000 Miscellaneous; PUBLIC INFORMATION
                    REPORT (PIR)
                    05/21/1997 Miscellaneous; ARTICLES OF
                    INCORPORATION
```

### ADDITIONAL DETAIL INFORMATION

```
                    Additional Details:STATE TAXPAYER
                    IDENTIFICATION NUMBER:  30119808704
```

The preceding public record data is for information purposes only and is not the official record. Certified copies can only be obtained from the official source.

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JORGE ALBERTO FLORES, et al.          §
    (Plaintiffs herein)                       §
                                                       §
                                                       §CIVIL ACTION NO. B-02-216
vs.                                                    §
                                                       §
FORD MOTOR COMPANY; et al.           §
                                                       §
    (Defendants herein)                       §

## AFFIDAVIT OF JOSE DANIEL GARCIA

BEFORE ME, the undersigned authority, on this day personally appeared Jose Daniel Garcia, who being by me duly sworn, deposed, and stated as follows:

"My name is Jose Daniel Garia. I am of sound mind. I am over eighteen (18) years of age, and have never been convicted of a felony crime or other crime involving moral turpitude. I am fully competent to make this affidavit. The following facts are true and correct and are within my personal knowledge."

"On Friday, April 4, 2003, I took the attached photograph which truly and accurately depicts the sign in front of the Titan Tire business located at 6700 Paredes Line Road in Brownsville, Texas."

Further affiant sayeth not.

_____
José Daniel Garcia

SWORN AND SUBSCRIBED TO on this the _10_ day of ~~August~~ *April*, 2003, as witness whereof is set my hand and seal of office.

_____
Notary Public, State of Texas

PRISCILLA ESQUEDA
Notary Public
STATE OF TEXAS
My Comm. Exp. 04-07-2004



Exhibit "D"























## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **JORGE ALBERTO FLORES and IMELDA** | § | |
| **HERNANDEZ CORDOVA (FLORES),** | § | |
| **Individually, and JAMES E. AGUIRRE,** | § | |
| **Individually, and FELIPE HERNANDEZ** | § | |
| **Individually** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. B-02-216** |
| | § | |
| | § | |
| **FORD MOTOR COMPANY,** | § | |
| **TITAN INTERNATIONAL, INC.** | § | |
| **TITAN TIRE CORPORATION, AND** | § | |
| **TITAN TIRE CORPORATION OF TEXAS** | § | |
| | § | |
| **Defendants.** | § | |

## JOINT DISCOVERY/CASE MANAGEMENT PLAN
### UNDER RULE 26(f)
### FEDERAL RULES OF CIVIL PROCEDURE

1. State where and when the meeting of the parties required by Rule 26(f) was held and identify the counsel who attended for each party.

**Meeting was held via telephone conference on March 27, 2003, at 2:00 p.m.**

**Attorneys for Plaintiffs:**

**Kevin Liles**
**Federal Admissions No. 21501**
**State Bar No. 00798329**
**Watts Law Firm, L.L.P.**
**Tower II Bldg., Suite 1400**
**555 N. Carancahua**
**Corpus Christi, Texas 78478**
**Attorneys for Plaintiffs Jorge Albert Flores and Imelda Hernandez Cordova (Flores)**

**Bradford Klager**

AUS:2022241.1
13486.95413

Exhibit "E"

Federal Admissions No. 24435
State Bar No. 24012969
Law Offices of Douglas Allison
500 North Water Street
South Tower - Suite 400
Corpus Christi, Texas 78471
Attorneys for Plaintiffs James E. Aguirre, Individually, and Felipe Hernandez, Individually

<u>Attorneys for Defendants:</u>

Richard H. Grafton
Federal Admissions No. 19276
State Bar No. 08252800
Brown McCarroll, L.L.P.
111 Congress Ave., Ste. 1400
Austin, Texas 78701
(512) 472-5456
(512) 479-1101 (Fax)
Attorneys for Defendant Ford Motor Company

Michael Rodriguez
Federal Admissions No. 18759
State Bar No. 00791553
Michael Rodriguez, P.L.L.C.
1000 E. Madison
Brownsville, Texas 78520
Attorneys for Defendants Titan International, Inc., Titan Tire Corp. And Titan Tire Corp. of Texas

2. List the cases related to this one that are pending in any state or federal court with the case number and court.

**Plaintiffs filed suit in the 197th Judicial District Court of Cameron County, Texas on October 7, 2002. Defendants removed the state court action to federal court on November 15, 2002.**

3. Specify the allegation of federal jurisdiction.

**Plaintiffs filed suit in the 197th Judicial District Court of Cameron County, Texas on October 7, 2002. Defendants removed the state court action to federal court on November 15, 2002. Defendants removed this action and state that federal jurisdiction is based on 28 U.S.C. § 1332(a) (diversity of citizenship due to fraudulent joinder). Plaintiffs dispute jurisdiction and have filed a motion to remand.**
4. Name the parties who disagree and the reasons.

**Plaintiffs have filed a motion to remand the action to state court.**

5. List anticipated additional parties that should be included, when they can be added, and by whom they are wanted.

**At this time, no party anticipates they will need to add additional parties.**

6. List anticipated interventions.

**Unknown.**

7. Describe class-action issues.

**None.**

8. State whether each party represents that it has made the initial disclosures required by Rule 26(a). If not, describe the arrangements that have been made to complete the disclosures.

**Initial disclosures have not been made, but all parties will provide initial disclosures by April 14, 2003.**

9. Describe the proposed agreed discovery plan, including:

A. Responses to all the matters raised in Rule 26(f).

**The responses are addressed within this Joint Discovery/Case Management Plan and the accompanying Scheduling Order. The only issue not addressed is Rule 26(c), protective orders, which the parties agree to address during the discovery process.**


B. When and to whom the plaintiff anticipates it may send interrogatories.

**Plaintiffs anticipate that they will send interrogatories to all named Defendants by May 14, 2003.**

C. When and to whom the defendant anticipates it may send interrogatories.

**Defendants anticipate that they will send interrogatories to all named Plaintiffs by June 2, 2003.**

D. Of whom and by when the plaintiff anticipates taking oral depositions.
**The Plaintiffs anticipate taking the depositions of the following categories of witnesses: (1) fact witnesses; (2) corporate representatives; (3) governmental investigators; (4) independent**

investigators; (5) expert witnesses of the parties; (6) persons designated as having knowledge of relevant facts; and (7) medical providers.

It is anticipated that all necessary depositions can be completed by March 1, 2004.

E. Of whom and by when the defendant anticipates taking oral depositions.

Defendants anticipate that they will take oral depositions of Plaintiffs, Plaintiffs' experts, all investigating officers with knowledge of relevant facts, all emergency medical personnel with knowledge of relevant facts, medical providers with knowledge of relevant facts, any additional fact witness, such as accident eyewitnesses or Plaintiffs' relatives who may speak to damages, and any additional persons designated as having knowledge of relevant facts.

At this time, the Defendants initially anticipate taking the following oral depositions:

(1)    Plaintiffs Jorge and Imelda Hernandez Cordova Flores;

(2)    Plaintiff Felipe Hernandez;

(3)    Plaintiff James E. Aguirre;

(4)    A. Lewis Herrington;

(5)    Floyd Franklin Green;

(6)    Armin Hoes;

(7)    Onassis Bridges;

(8)    Lee Sneed;

(9)    Kevin Vreeland;

(10)   EMS personnel who provided first aid and transport for the Plaintiffs;

(11)   One or more of the treating physicians of Plaintiffs;

(12)   Other yet to be identified police personnel who were present at or assisted in the accident investigation;

(13)   Defendants may also want to take the depositions of all fact witnesses designated by the Plaintiffs or any other persons or entities identified through discovery;

(14)   Experts identified by the Plaintiffs.

**It is anticipated that all necessary depositions can be completed by March 1, 2004.**

F. When the plaintiff (or the party with the burden of proof on an issue) will be able to designate experts and provide the reports required by Rule 26(a)(2)(B) and when the opposing party will be able to designate responsive experts and provide their reports.

*See* **proposed Scheduling Order. Plaintiffs will designate expert witnesses and provide expert reports by October 3, 2003. Defendants will designate responsive experts and produce reports by December 19, 2003, based on Plaintiffs' agreement that all its experts will be offered for deposition before November 14, 2003.**

G. List expert depositions the plaintiff (or the party with the burden of proof on an issue) anticipates taking and their anticipated completion date. *See* Rule 26(a)(2)(B) (expert report).

*See* **proposed Scheduling Order. Plaintiffs will depose all experts designated by the Defendants, including, but not limited to, Defendants' accident reconstructionist, vehicle defect expert(s), tire defect expert(s), biomechanic, economist, medical experts and possibly one or more treating physicians. Plaintiffs intend to depose all experts which Defendants eventually identify through discovery or designate. If Defendants designate expert witnesses and provide expert reports and complete answers to interrogatories regarding such expert opinions by December 19, 2003, the parties agree that the depositions of Defendants' experts will be completed by January 30, 2004.**

H. List expert depositions the opposing party anticipates taking and their anticipated completion date. *See* Rule 26(a)(2)(B) (expert report).

*See* **proposed Scheduling Order. Defendants will depose all experts designated by the Plaintiffs, including, but not limited to, Plaintiffs' accident reconstructionist, vehicle defect expert(s), tire defect expert(s), biomechanic, economist, medical experts and possibly one or more treating physicians. Defendants intend to depose all experts which Plaintiffs eventually identify through discovery or designate. If Plaintiffs designate expert witnesses and provide expert reports and complete answers to interrogatories regarding such expert opinions by October 3, 2003, the parties agree that the depositions of Plaintiffs' experts will be completed by November 14, 2003.**

10. If the parties are not agreed on a part of the discovery plan, describe the separate views and proposals of each party.

**All parties agree to this discovery plan.**

11. Specify the discovery beyond initial disclosures that has been undertaken to date.

AUS:2022241.1
13486.95413

5

**No formal discovery to date. Informal investigations have been conducted by all parties.**

12. State the date the planned discovery can reasonably be completed.

**March 1, 2004.**

13. Describe the possibilities for a prompt settlement or resolution of the case that were discussed in your Rule 26(f) meeting.

**All parties believe that once factual discovery has been completed, non-binding mediation can occur. Such non-binding mediation should occur before February 6, 2004.**

14. Describe what each party has done or agreed to do to bring about a prompt resolution.

**No actions have been taken to date, but see response to item 13 above.**

15. From the attorneys' discussion with the client, state the alternative dispute resolution techniques that are reasonably suitable and state when such a technique may be effectively used in this case.

**All parties believe that once factual discovery has been completed, non-binding mediation can occur. Such non-binding mediation should occur before February 6, 2004.**

16. Magistrate judges may now hear jury and non-jury trials. Indicate the parties' joint position on a trial before a magistrate judge.

**The parties cannot reach an agreement to have the trial before a magistrate judge.**

17. State whether a jury demand has been made and if it was made on time.

**A timely jury demand has been made.**

18. Specify the number of hours it will take to present the evidence in this case.

**Plaintiffs estimate 40 hours; Defendants estimate 40 hours.**

19. List pending motions that could be ruled on at the initial pretrial and scheduling conference.
**Titan Defendants' Motion to Dismiss for Failure to State a Claim;**
**Titan Defendants' Motion to Dismiss for Improper Venue;**
**Titan Defendants' Motion to Dismiss for Lack of Personal Jurisdiction; and**
**Plaintiffs' Motion to Remand.**

20. List other motions pending.

**None.**

21. Indicate other matters peculiar to this case, including discovery, that deserve the special attention of the court at the conference.

**None.**

22. List the names, bar numbers, addresses and telephone numbers of all counsel.

**Mikal Watts**
**Federal Admissions No. 12419**
**State Bar No. 20981820**
**Kevin Liles**
**Federal Admissions No. 21501**
**State Bar No. 00798329**
**Watts Law Firm, L.L.P.**
**Tower II Bldg., Suite 1400**
**555 N. Carancahua**
**Corpus Christi, Texas 78478**
**(361) 887-0500**
**(361) 887-0055 (fax)**
**Attorneys for Plaintiffs Jorge Albert Flores and Imelda Hernandez Cordova (Flores)**

**Douglas A. Allison**
**Federal Admissions No. 10252**
**State Bar No. 01083500**
**Bradford Klager**
**Federal Admission No. 24435**
**State Bar No. 24012969**
**Law Offices of Douglas Allison**
**500 North Water Street**
**South Tower - Suite 400**
**Corpus Christi, Texas 78471**
**(361) 888-6002**
**(361) 888-6651 (fax)**
**Attorneys for Plaintiffs James E. Aguirre, Individually, and Felipe Hernandez, Individually**

**Richard H. Grafton**
**Federal Admissions No. 19276**
**State Bar No. 08252800**
**Brown McCarroll, L.L.P.**
**111 Congress Ave., Ste. 1400**
**Austin, Texas 78701**

AUS:2022241.1
13486.95413

7

(512) 472-5456
(512) 479-1101 (fax)

Doug Seitz
Federal Admissions No. 18831
State Bar No. 00789975
Snell & Wilmer, L.L.P.
One Arizona Center
Phoenix, Arizona 85004-0001
(602) 382-6220
(602) 382-6070 (Fax)
Attorneys for Defendant Ford Motor Company


Michael Rodriguez
Federal Admissions No. 18759
State Bar No. 00791553
Michael Rodriguez, P.L.L.C.
1000 E. Madison
Brownsville, Texas 78520
(956) 574-9333
(956) 574-9337 (fax)
Attorneys for Defendants Titan International, Inc., Titan Tire Corp. and Titan Tire Corp. of
Texas

Respectfully submitted,

Law Offices of Douglas Allison
500 North Water Street
South Tower - Suite 400
Corpus Christi, Texas 78471
(361) 888-6002
(361) 888-6651 (fax)


By: _____

       Douglas A. Allison
       Federal Admissions No. 10252
       State Bar No. 01083500
       Bradford Klager
       Federal Admission No. 24435
       State Bar No. 24012969


ATTORNEYS FOR JAMES E. AGUIRRE, INDIVIDUALLY AND FELIPE HERNANDEZ, INDIVIDUALLY

THE WATTS LAW FIRM
Tower II Bldg., Suite 1400
555 N. Carancahua
Corpus Christi, Texas 78478
361/887-0500
361/887-0055 (Fax)


By: _Mikal Watts  by permission_ _____

    Mikal Watts
    Federal Admissions No. 12419
    State Bar No. 20981820
    Kevin Liles
    Federal Admissions No. 21501
State Bar No. 00798329


ATTORNEYS FOR PLAINTIFFS JORGE
ALBERTO FLORES AND IMELDA HERNANDEZ
CORDOVA (FLORES)

MICHAEL RODRIGUEZ, P.L.L.C.
1000 E. Madison
Brownsville, Texas 78520
(956) 574-9333
(956) 574-9337 (Fax)


By: _____
    Michael Rodriguez
    Federal Admissions No. 18759
    State Bar No. 00791553

ATTORNEYS FOR TITAN INTERNATIONAL,
INC., TITAN TIRE CORPORATION, AND
TITAN TIRE CORPORATION OF TEXAS

Doug Seitz
Federal Admissions No. 18831
Texas State Bar No. 00789975
SNELL & WILMER, L.L.P.
One Arizona Center
400 East Van Buren
Phoenix, Arizona 85004-0001
(602) 382-6000
(602) 382-6070 (Fax)

AND

BROWN MCCARROLL, L.L.P.
111 Congress Avenue, Suite 1400
Austin, Texas 78701
(512) 472-5456
(512) 479-1101 (Fax)

By: _Richard H. Grafton  by permission_
        Richard H. Grafton
        Federal Admissions No. 19276
        State Bar No. 08252800

ATTORNEYS FOR DEFENDANT,
FORD MOTOR COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all known counsel of record as set forth below by certified mail, return receipt requested, in compliance with the Federal Rules of Civil Procedure on this __31st__ day of March, 2003.

### Via Certified Mail, Return Receipt Requested

Kevin Liles
Mikal C. Watts
THE WATTS LAW FIRM
Tower II Bldg., Suite 1400
555 N. Carancahua
Corpus Christi, Texas 78478

Brad Klager
Douglas A. Allison
Law Offices of Douglas Allison
500 North Water Street
South Tower - Suite 400
Corpus Christi, Texas 78471

Michael Rodriguez
Michael Rodriguez, P.L.L.C.
1000 E. Madison
Brownsville, Texas 78520

Michael Rodriguez

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JORGE ALBERTO FLORES and IMELDA §
HERNANDEZ CORDOVA (FLORES), §
Individually; and JAIME E. AGUIRRE, §
Individually; and FELIPE HERNANDEZ, §
Individually §
     (Plaintiffs herein) §
 §
 §     CIVIL ACTION NO. B-02-216
vs. §
 §
FORD MOTOR COMPANY; §
TITAN INTERNATIONAL, INC.; §
TITAN TIRE CORPORATION; AND §
TITAN TIRE CORPORATION OF TEXAS §
     (Defendants herein) §

## PLAINTIFFS' FIRST SET OF DISCOVERY TO DEFENDANTS, TITAN INTERNATIONAL, INC.

TO:    Defendant, Titan International, Inc., by and through their attorney of record, Michael Rodriguez, 1000 E. Madison, Brownsville, Texas 78520.

NOW COME Plaintiffs in the above-styled and numbered cause and pursuant to

Rule 34 of the FEDERAL RULES OF CIVIL PROCEDURE and the Local Rules of this Court,

serves Plaintiffs' First Set of Discovery to Titan International, Inc.

Each item labeled "REQUEST FOR PRODUCTION" is a Request for Production

propounded pursuant to the provisions of Rule 34, FED. R. CIV. P., and the Plaintiffs

require that the Defendant produce the requested documents at the Law Offices of

Douglas Allison, 500 North Water Street, South Tower - Suite 400, Corpus Christi,

Texas 78471 within the time stated herein. **Any requested document previously**



**produced to Plaintiffs need not be produced again so long as the previous production of the document is described with sufficient particularity so that the document can be located by Plaintiffs.**

Pursuant to Rule 34, FED. R. CIV. P., you are requested to organize and label the items produced to correspond to the categories in each Request. Items which are required to be produced in response to more than one Request may be listed by number in response to each such Request, but the item itself need only be produced one time. All items to be produced are to be forwarded to the undersigned attorneys for Plaintiffs attached to or together with your written response.

### Please Note:

(1)    If a discovery request seeks the production of documents or things which do not now exist, you are requested to state in your answer or objection that such documents do not exist, or that such documents never existed, and the reasons or other explanation for the non-existence or non-production of such documents.

(2)    An objection that a request for production is overly broad or exceeds the scope of permissible discovery does not relieve you of the duty to respond to that portion which is not subject to the objection. If you make any such objection, you are requested to specifically state what limitations you claim should be made on the request, and to make that portion of the discovery which is not subject to such limitations.

(3)     Failing to fully respond, giving incomplete or false answers, or abusing the

discovery process in any manner may result in the imposition of discovery

sanctions against you, including but not limited to, a default judgment, an order

disallowing further discovery, taking facts as established, precluding the

introduction of evidence, treating such abuses as contempt of court, and requiring

the payment of the plaintiffs' expenses and attorneys' fees.  See FED. R. CIV. P.

37(a)(4).

                            Respectfully submitted,

                            LAW OFFICES OF DOUGLAS ALLISON
                            500 North Water Street,
                            South Tower, Suite 400
                            Corpus Christi, Texas 78471
                            (361) 888-6002
                            (361) 888-6651 - Facsimile

                            By: _Douglas A. Allison by Brad Klager_
                                Douglas A. Allison
                                Federal No. 10252
                                State Bar No. 01083500
                                Bradford P. Klager
                                Federal No. 24435
                                State Bar No. 24012969

                    ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been forwarded to opposing counsel of record, via facsimile and certified mail, return receipt requested, on this the 10th day of April, 2003.

Mikal C. Watts
The Watts Law Firm, L.L.P.
Tower II Bldg., Suite 1400
555 N. Carancahua
Corpus Christi, Texas 78478

Michael Rodriguez
Michael Rodriguez, P.L.L.C.
1000 E. Madison
Brownsville, Texas 78520

Richard H. Grafton
Brown McCarroll, L.L.P.
111 Congress Avenue, Suite 1400
Austin, Texas 78701-4043

_Douglas A. Allison by Brad Hager_
Douglas A. Allison

## PLAINTIFFS' FIRST SET OF DISCOVERY TO TITAN INTERNATIONAL, INC.

**REQUEST FOR PRODUCTION NO. 1:**

Produce copies of all documents and tangible things that indicate Defendant Titan International's ownership of any real property in Texas. Your response to this request should include, but is not limited to, title documents, contracts for sale, taxing documents from any governmental or taxing authority, and all other documents and tangible things that show any (or any portion of) ownership in real property. Please limit your response to the years 1996 to present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 2:**

Produce copies of all documents and tangible things that indicate Defendant Titan International's ownership of any property (other than real property) in Texas. Your response to this request should include, but is not limited to, title documents for automotive vehicles and/or other machines/equipment, contracts for sale of automotive vehicles and/or other machines/equipment, and all documents and tangible things that show any (or any portion of) ownership in property (other than real property). Please limit your response to the years 1996 to present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 3:**

Produce copies of all documents and tangible things that indicate Defendant Titan International's leasing (or other right or interest) of any real property in Texas. Your response to this request should include, but is not limited to, leasing documents for real property, contracts for lease of any real property, and all other documents and tangible things that show any (or any portion of) a leased or other interest real property. Please limit your response to the years 1996 to present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 4:**

Produce copies of all documents and tangible things that indicate Defendant Titan International's leasing (or other right or interest) of any property (other than real property) in Texas. Your response to this request should include, but is not limited to, leasing documents for automotive vehicles and/or other machines/equipment, leasing contracts of automotive vehicles and/or other machines/equipment, and all documents and tangible things that show any (or any portion of) a

lease interest (or other similar interest) in property (other than real property).  Please limit your response to the years 1996 to present.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 5:**

Produce all contracts for employment of any employees of Defendant Titan International.  Please limit your response to such employees who make (or in the past have made) more than three (3) business trips to Texas per year.  Please further limit your response to the years 1996 to present.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 6:**

Produce all contracts for employment of any employees of Defendant Titan International.  Please limit your response to such employees who maintain (or have maintained) a residence in Texas.  Please further limit your response to the years 1996 to present.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 7:**

Produce a copy of all paychecks and pay stubs from Defendant Titan International to "Texas employees."  For purposes of this request only, the term "Texas employees" refers to any person who resided in Texas at the time of receiving pay, or who physically was within the boundaries of the State of Texas at the time of receiving pay.  Please limit your response to the years 1996 to present.

**RESPONSE:**


**REQUEST FOR PRODUCTION NO. 8:**

Produce any and all quality assurance and quality control manuals for the tire building activities that occur in Texas.  Your response should include production of all such manuals, operating procedures, standard operating procedures, booklets, notebooks, folders, and other quality assurance and control documents and tangible things (whether such items are from Defendant Titan International or Defendant Titan of Texas, Inc., or some other legal entity).  Please limit your response to the years 1996 to present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 9:**

Produce any and all adjustment manuals (in color so as to allow copying of the color photographs included therewith) utilized by this Defendant. Please limit your response to the years 1996 to present.

**RESPONSE:**

**INTERROGATORY NO. 1:**

Identify fully the chain of command (by stating each person's name in the chain of command, the person's job title or job description, and the corporate identity of the person's employer) for handling of warranty claims for tires manufactured by this Defendant in Texas. Please limit your response to the time of the occurrence made the basis of the suit.

**ANSWER:**

**INTERROGATORY NO. 2:**

Identify fully the chain of command (by stating each person's name in the chain of command, the person's job title or job description, and the corporate identity of the person's employer) for handling of lawsuits for tires manufactured by this Defendant in Texas. Please limit your response to the time of the occurrence made the basis of the suit.

**ANSWER:**

**INTERROGATORY NO. 3:**

Identify fully the chain of command (by stating each person's name in the chain of command, the person's job title or job description, and the corporate identity of the person's employer) for handling of property claims for tires manufactured by this Defendant in Texas. Please limit your response to the time of the occurrence made the basis of the suit.

**ANSWER:**

**INTERROGATORY NO. 4:**

Identify fully the chain of command (by stating each person's name in the chain of command, the person's job title or job description, and the corporate identity of the person's employer) for tire design work supporting tires manufactured by this Defendant in Texas. Please limit your response to the time of the occurrence made the basis of the suit.

**ANSWER:**

**INTERROGATORY NO. 5:**

Does Defendant Titan International, Inc. (by and through its employees) provide tire design services for Defendant Titan Tire of Texas, Inc? Please fully explain your answer for the years 1996 to present.

**ANSWER:**

**INTERROGATORY NO. 6:**

Identify fully (by name and complete address) all tire designers employed by Defendant Titan of Texas, Inc. Please limit your response to the time of the occurrence made the basis of the suit.

**ANSWER:**

**INTERROGATORY NO. 7:**

Identify fully the chain of command (by stating each person's name in the chain of command, the person's job title or job description, and the corporate identity of the person's employer) for tire engineering work supporting tires manufactured by this Defendant in Texas. Please limit your response to the time of the occurrence made the basis of the suit.

**ANSWER:**

**INTERROGATORY NO. 8:**

Does Defendant Titan International, Inc. (by and through its employees) provide tire engineering services for Defendant Titan Tire of Texas, Inc? Please fully explain your answer for the years 1996 to present.

**ANSWER:**

**INTERROGATORY NO. 9:**

Identify fully (by name and complete address) all tire engineers employed by Defendant Titan of Texas, Inc. Please limit your response to the time of the occurrence made the basis of the suit.

**ANSWER:**

**REQUEST FOR PRODUCTION NO. 10:**

Produce copies of all loan agreements (and all related documents and tangible things such as guarantee security documents) whereby Defendant Titan of Texas, Inc., has borrowed money from any bank, or other financial institution, or any of its related companies (including Defendant Titan International, Inc.). Please limit your response to the years 1996 to present.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 11:**

Produce copies of all loan agreements (and all related documents and tangible things such as guarantee or security documents) whereby Defendant Titan International, Inc., has borrowed money from any bank, or other financial institution, or any of its related companies (including Defendant Titan of Texas, Inc.). Please limit your response to such transactions that occurred in Texas, or were transacted with a Texas financial institution. Please limit your response to the years 1996 to present.

**RESPONSE:**

**INTERROGATORY NO. 10:**

State the names, addresses, and identify the employing corporation of all persons whose job it is to perform the compounding work for tires manufactured in Texas (by any Titan entity). Please limit your response to the years 1996 to present.

**ANSWER:**

**INTERROGATORY NO. 11:**

By use of a unique name, description, or code, please list all skim stocks that are proprietary to Defendant Titan International, Inc., and utilized in the tire building or tire manufacturing process by Defendant Titan of Texas, Inc.

**ANSWER:**

**INTERROGATORY NO. 12:**

By use of a unique name, description, or code, please identify the skim stock used in the tire made the subject of the suit.

**ANSWER:**

**REQUEST FOR PRODUCTION NO. 12:**

Produce all licensing agreements, and all documents and tangible things that may be for the purpose of allowing licensing or sharing of any proprietary information, for skim stock formulations proprietary to Defendant Titan International, Inc., as shared with Defendant Titan of Texas, Inc.   Please limit your response to the years 1996 to present.

**RESPONSE:**

**INTERROGATORY NO. 13:**

Do the Consolidated Financial Statements (as are publicly available as a part of 10K reportings and/or Annual Statements for Titan International, Inc.) from Titan International, Inc., consider assets, liabilities, and other appropriate financial information of Titan of Texas, Inc.

**ANSWER:**

**REQUEST FOR PRODUCTION NO. 13:**

For the tire made the subject of the suit, please produce all green tire specifications.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 14:**

For the tire made the subject of the suit, please produce all cured tire specifications.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 15:**

Produce all advertisements for Defendant Titan International's products, including, but not limited to advertising proofs, printed advertisements, radio advertisements, sales brochures, and television advertisements.

**RESPONSE:**

**INTERROGATORY NO. 14:**

For any advertisement responsive to the preceding Request for Production, please state whether such advertisement was aired, broadcast, printed, circulated, or otherwise distributed in the State of Texas.

**ANSWER:**

**REQUEST FOR PRODUCTION NO. 16:**

Please produce complete copies of all contracts or other agreements in your possession for which relate to Defendant Titan International and for which:

    a)      Any part of the agreement was negotiated in Texas;
    b)      Any part of the agreement is to be (or was) performed in Texas;
    c)      Contain a provision that Texas law is to apply to any portion of the agreement;
    d)      Any agreement which relates to the relationship between or among the Titan Defendants

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 17:**

Please produce all documents relating to any real estate or other property located in Texas that is leased or owned by Defendant Titan International.

**RESPONSE:**

**REQUEST FOR PRODUCTION NO. 18:**

Please produce all documents which relate to Defendant Titan International's inspection, monitoring, or quality control of the products manufactured by Defendant Titan Texas.

**RESPONSE:**

**INTERROGATORY NO. 15:**

Please identify all products manufactured or designed by Defendant Titan International which have been tested or evaluated at any testing facility or test track in Texas.

**ANSWER:**

**INTERROGATORY NO. 16:**

Please identify, by stating the name, address, and telephone number, all sellers or dealers in Texas who advertise, sell, or carry any model or brand of tire designed or manufactured by Defendant Titan International.

**ANSWER:**

**INTERROGATORY NO. 17:**

Please identify, by stating the make, model, and years of manufacture, all tires designed or manufactured by Defendant Titan International, and sold in Texas.

**ANSWER:**